AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*September 11, 2018*

David J. Bradley, Clerk of Court

United States of America
v.
NADAL DIYA (46)
Dubai, United Arab Emirates

*Defendant(s)*

Case No. **18mj1444**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of July 1, 2014, and August 31, 2015, in the county of Harris in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1546(a) | Fraud and misuse of visas, permits and other documents |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*
Jennifer S. Whitehurst, Special Agent
*Printed name and title*

Sworn to telephonically.

Date: 09/11/2018

*Judge's signature*

City and state: Houston, Texas

Dena Hanovice Palermo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jennifer S. Whitehurst, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed since December 2004. I am currently assigned to the Houston Field Office in Houston, Texas. I have received training in the preparation, presentation, and service of criminal complaints and arrest and search warrants, and have been involved in the investigation of numerous types of offenses against the United States, including crimes involving terrorism and crimes related to visa and passport violations.

### PURPOSE OF THE AFFIDAVIT

2. I make this affidavit in support of an application for a complaint and arrest warrant for Nadal Diya, a 46-year-old resident of Dubai in the United Arab Emirates, who committed a variety of offenses involving false and fraudulent passports in the Southern District of Texas, and elsewhere within the jurisdiction of the Court, between on or about June 1, 2014 and August 31, 2015.

### CRIMINAL OFFENSES ALLEGED

3. On or about July 19, 2014, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, NADAL DIYA did knowingly use, attempt to use and possess a document prescribed by statute or regulation for entry into the United States, that is a passport purporting to be issued by the country of Guatemala in the name of NADAL DIYA, which DIYA

1

knew to be forged, counterfeited and falsely made, in violation of Title 18, United States Code, Sections 1546(a) and 2.

4. On or about September 10, 2014, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, NADAL DIYA did knowingly use, attempt to use and possess a document prescribed by statute or regulation for entry into the United States, that is a passport purporting to be issued by the country of Guatemala in the name of NADAL DIYA, which DIYA knew to be forged, counterfeited and falsely made, in violation of Title 18, United States Code, Sections 1546(a) and 2.

5. Between on or about August 28, 2014, and on or about August 23, 2015, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, NADAL DIYA did knowingly attempt to possess a document prescribed by statute or regulation for entry into the United States, that is a passport purporting to be issued by the country of Argentina in the name of NADAL DIYA, which DIYA knew to be forged, counterfeited and falsely made, in violation of Title 18, United States Code, Sections 1546(a) and 2.

## EVIDENCE SUPPORTING CRIMINAL OFFENSES ALLEGED

6. Nadal Diya is a businessman of Syrian and Palestinian origin who resides in Dubai in the United Arab Emirates (U.A.E.). He was born in Homs, Syria on July 18, 1972, and he is a citizen and national of Syria. Diya has never been a citizen or national of either Guatemala or Argentina. In the summer of 2014, while he was traveling in the United States on his valid Syrian passport and a valid United States tourist visa. While he was in the United States on this trip, Diya possessed and used a fraudulent passport in his name purportedly issued by the Republic of Guatemala. In September 2014, the Guatemalan Consul General in Houston, Texas confiscated

the fraudulent passport. Soon after, Diya left the United States for the U.A.E. to renew his U.S. visa and when he returned to the U.A.E., he discovered that his visa had been denied and that he could no longer enter the United States. Undeterred, and with the help of a Houston based business associate and co-conspirator (CC-1), Diya attempted to procure a fraudulent Argentinian passport, presumably so he could travel to the United States. Unbeknownst to Diya and CC-1, the person Diya tasked with procuring the fake Argentinian passport was an undercover FBI employee (UCE).

7. More specifically, on July 17, 2014, Diya arrived in the United States on a tourist visa related to business interests he claimed he had in Texas. He had flown in from Dubai, U.A.E. to Houston, Texas. On July 19, 2014, Diya claimed to be a Guatemalan citizen, and presented a fraudulent Guatemalan passport in his name bearing passport number 000964862 (the "Fake Guatemalan Passport") as proof of his identity, to a Bank of America employee at a Bank of America branch in Conroe, Texas (approximately 45 miles north of Houston, Texas) in order to open an account for a Texas-based business. He was accompanied to the bank by another individual, hereafter referred to as "CC-1." The passport information was documented on the Bank of America Business Signature Card for the business's bank account. On that document, Diya was listed as President and CC-1 was listed as the Vice President. Diya and CC-1 each signed and dated this form on July 19, 2014.

8. On August 14, 2014, an FBI undercover employee (UCE) and an FBI confidential human source (CHS) met with Diya and CC-1 in Lake Charles, Louisiana, approximately a two hour drive east of Houston. The UCE and CHS recorded the conversations that took place at this meeting. During the meeting, CC-1 stated he obtained eleven (11) fraudulent Guatemalan passports in the past 18 months and said because his contact had recently increased the price for

fraudulent passports, he was looking for a new supplier. At that same meeting, Diya requested a United States (U.S.) passport from the UCE. The UCE negotiated a price of $150,000 for a legitimate U.S. passport, but as discussed later, Diya through CC-1 would eventually seek an Argentinian passport from the UCE.

9. According to employees of the Guatemalan Consulate in Houston, on September 10, 2014, Diya presented the Fake Guatemalan Passport to an employee of the Guatemalan Consulate in order to procure Consular Identification documents. Diya presented the Fake Guatemalan Passport which listed Diya's name, passport number 000964862, his date and place of birth, and his nationality as "Guatemalteca," which is Spanish for "Guatemalan."

10. To verify the legitimacy of the passport in Diya's name, the Guatemalan Consulate contacted the Guatemalan Government Ministry of Immigration. The Ministry of Immigration informed the Consulate that the passports were fraudulent. According to Guatemalan records, the passport numbers listed on the passports belonged to other individuals. The Guatemalan Consulate confiscated the passport.

11. The Houston Guatemalan Consulate General issues approximately fifty (50) Guatemalan identification (ID) cards per day. In order to receive an ID card, an individual is required to be a Guatemalan citizen and must present his/her Guatemalan passport. Since the Consulate views numerous passports daily, the employees know if one is fraudulent. The Consulate provided the Fake Guatemalan Passport to the FBI.

12. Finally, Consulate employees stated CC-1 visited the Consulate on multiple occasions in the weeks following the Consulate's confiscation of the Fake Guatemalan Passport attempting to obtain it for Diya.

13. On September 17, 2014, Diya departed the United States and returned to the U.A.E. in order to renew his United States visa. Diya's U.S. visa request was denied, and Diya was therefore denied the ability to legally travel to the United States.

14. On November 20, 2014, CC-1 was selected for a secondary inspection by U.S. Customs and Border Protection officers at the Houston Bush Intercontinental Airport where his laptop was imaged pursuant to a border search. CC-1 had just arrived in Houston on a flight from Istanbul, Turkey. Agents found several images of Guatemalan passports contained on his laptop hard drive, including one in the name of Diya, the same one which was previously confiscated by the Guatemalan Consulate and is now in the possession of the FBI. Agents also discovered an email on the laptop where a photocopy of the Fake Guatemalan Passport was emailed from CC-1 to Diya, indicating that CC-1 likely supplied Diya the Fake Guatemalan Passport.

15. On August 28, 2014, the CHS and UCE consensually recorded a meeting with CC-1 and Diya in Houston, Texas. The group discussed the UCE providing fraudulent Argentinean passports. At the meeting, CC-1 and Diya paid the UCE $10,000 in exchange for the UCE getting a fraudulent Argentinean passport, which was ultimately to be put in Diya's name.

16. From December 15-17, 2014, the CHS and UCE recorded several meetings with CC-1 which took place in Lake Charles, Louisiana. During the meetings, CC-1 requested the UCE produce a fraudulent Argentinean passport for Diya. CC-1 provided a photocopy of Diya's fingerprints and a copy of Diya's fraudulent Guatemalan passport to the UCE in order to produce the Argentinean passport. UCE placed a call in the presence of the CHS and CC-1. During the call, the UCE spoke with his/her alleged contact in Argentina to discuss the details of creating the passport.

17. On or about January 26, 2015, a Federal Express package was delivered to the CHS addressed to the UCE from CC-1. The contents of the package were two passport-sized photographs of Diya and a photocopy of ten print fingerprints.

18. On January 27, 2015, the UCE consensually recorded a telephonic contact with CC-1. During the conversation, the UCE stated he/she received the package from CC-1. The UCE explained that the photographs and fingerprints were good. The UCE also stated he/she had already given three ($3,000 to the UCE's contact) and has the remaining seven ($7,000) from the money CC-1 gave the UCE (which was the $10,000 down payment that occurred on August 28, 2014).

19. On February 8, 2015, CHS and UCE consensually recorded a meeting held in Houston, Texas with CC-1. During the meeting, they discussed, among other things, the status of Diya's pending fraudulent Argentinian passport.

20. In May 2015, the UCE texted CC-1 photographs of Diya's fraudulent Argentina passport. Additionally, the UCE requested CC-1 supply Diya's address in order for the UCE to mail the passport to Diya.

21. On June 4, 2015, the UCE and the CHS consensually recorded a telephonic contact with CC-1. The UCE again requested CC-1 supply Diya's address in order for the UCE to mail the fraudulent Argentinian passport to Diya.

22. On June 5, 2015, CC-1 sent UCE a photograph via a text message. Specifically, the photograph was a snapshot of an email sent on May 18, 2015 from an email address utilized by Diya to CC-1 with the subject: "My Address" and an address and phone number for Diya.

23. On June 9, 2015, FBI Special Agents mailed a package in a standard FedEx Express cardboard envelope. The package contained a standard letter sized piece of paper stating the

6

contents were from UCE. The package was sent to the address provided by Diya to CC-1, and purportedly contained Diya's fraudulent Argentina passport. The package did not in fact contain such a passport.

24. According to FedEx tracking system, the aforementioned package allegedly containing Diya's fraudulent Argentina passport was delivered on June 11, 2015, at 2:07 p.m. in Dubai, U.A.E. That same day, CC-1 texted the UCE and asked if the matter was a "joke" confirming that Diya had received an empty FedEX package except for a piece of paper stating the contents were from the UCE. Diya never did receive the fraudulent Argentinian passport, and later feared that the passport had been intercepted by government authorities.

## CONCLUSION

25. Based on the foregoing, which I affirm is true and correct to the best of my knowledge and belief, I respectfully submit that probable cause exists to support that NADAL DIYA has committed the offenses of fraud and misuse of visas, permits and other documents, in violation of Title 18, United States Code, Sections 1546(a) and 2, as detailed above.

_____
Jennifer S. Whitehurst
Special Agent
Federal Bureau of Investigation

Sworn to telephonically. on this 11th day of September 2018, and I find probable cause supporting each of the criminal offenses alleged in this affidavit.

_____
Dena Hanovice Palermo
United States Magistrate Judge
Southern District of Texas